## FIRST NATIONAL BANK OF ATLANTA v. ALLEN, Collector of Internal Revenue.

### Civ. A. 743.

United States District Court
M. D. Georgia, Macon Division.

Aug. 29, 1951.

Spalding, Sibley, Troutman & Kelley, Atlanta, Ga. (Robt. B. Troutman, and Furman Smith, Atlanta, Ga., of counsel), for plaintiff.

John P. Cowart, U. S. Atty., T. Reese Watkins, Asst. U. S. Atty., Macon Ga. (Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe, Homer R. Miller, Special Assts. to the Atty. Gen., on the brief), for defendant.

DAVIS, Chief Judge.

Plaintiff herein qualified as executor of the will of Conkey P. Whitehead and on January 31, 1942, within the time fixed by law, filed a federal estate tax return, disclosing a tax due of $904,654.82, which amount was paid with the return. On

January 20, 1945, the Commissioner of Internal Revenue gave notice to the taxpayer of an alleged deficiency of estate taxes in the principal amount of $2,109,675.04, which taxpayer paid on April 2, 1945, together with interest in the amount of $400,202.70. On July 19, 1945, an additional payment of interest in the amount of $635.56 was made.

On May 8, 1945, plaintiff filed a claim for refund in the amount of $2,509,877.44, based on three grounds: (1) Over-valuation of 100 shares of stock of Copaco, Inc. (2) Over-valuation of 100 shares of stock of Whitehead Holding Company. (3) Denial to the taxpayer of a deduction, pursuant to Section 812(d), Internal Revenue Code, 26 U.S.C.A. § 812(d), on account of a transfer and conveyance to a charitable corporation. The claim for refund also stated that the payment of the additional tax and the raising of the funds to pay the same and the proceedings relating thereto would increase executor's commissions and furnish grounds for additional deductions for administrative expenses allowed by the law of the jurisdiction under which the estate was being administered.

On January 12, 1946, no action having been taken by the commissioner, taxpayer filed suit in this Court to recover estate taxes in the amount of $2,503,477.28, plus interest. The only grounds of the suit were the over-valuation of the stock of the two corporations and the denial of the claimed deduction on account of the transfer to a charitable corporation. The complaint did not allege any error on the part of the commissioner in denying additional deductions on account of administrative expenses, and was never amended to so allege.

Pre-trial conferences were held and it was agreed that three questions pertaining to the three issues raised by the pleadings should be submitted to the jury for answers. On April 25, 1947, the jury returned a special verdict answering all three questions. Prior to entry of a judgment based on the answers to these questions, plaintiff framed a suggested decree and submitted it to the defendant's counsel. Counsel agreed to the correctness of the amount awarded to the plaintiff, as stated in the decree, but objected to a paragraph which sought to reserve the question of additional deductions for administrative expenses. On June 24, 1947, the court entered a judgment, the second paragraph of which reads, as follows: "This judgment is and shall be without prejudice to any right, if any, which plaintiff may have under existing law to file claim for, sue for, and recover additional refund of estate tax on the estate of said Conkey P. Whitehead, on the grounds that plaintiff has incurred or will incur additional amounts for administration expenses as are allowed by the laws of the jurisdiction under which the estate is being administered, in addition to such expenses allowed in the calculation of the amount of this judgment, but if any such claim is made and allowed, this judgment shall not prevent a corresponding adjustment in the value of the charitable bequests allowed as deductions in the computation of the amount of this judgment and the amount of such claim may be reduced accordingly. This court does not intend to express any opinion as to whether the plaintiff has any such right."

Counsel for the defendant objected to inclusion of this paragraph but insisted that, if the reservation be included, the part allowing a recomputation of the value of the charitable bequests as a result of such allowance must be also included in the judgment. This was done. Plaintiff does not deny that the value of the charitable bequests should be recomputed, if an additional allowance be made for administrative expenses.

On September 12, 1947, the defendant filed notice of appeal to the Court of Appeals for the Fifth Circuit, and on July 12, 1948, the judgment was affirmed and thereafter became final. Allen v. First Nat. Bank of Atlanta, 5 Cir., 169 F.2d 221. On appeal the defendant contested the three issues determined by the jury and did not raise any question as to the validity of the reservation set forth in paragraph 2 of the judgment.

On April 1, 1948, the taxpayer filed an additional claim for refund, which was based upon an alleged right to an allowance

for additional expenses itemized in the amended claim in the sum of $295,022.06. Taxpayer claimed a refund of estate taxes in the sum of $102,051.50 on account of these deductions. On November 21, 1949, the Commissioner notified taxpayer of the rejection of this claim for refund. Taxpayer filed this suit for refund on March 31, 1950, and an amendment thereto setting out additional administrative expenses on May 12, 1951, which amendment was allowed without objection.

In addition to expenses incurred in the previous litigation, taxpayer's present complaint itemized administrative expenses incurred in connection with a suit for refund of income taxes, which had been erroneously assessed against the estate. That action was filed subsequently to the action for refund of estate taxes and was prosecuted to a judgment after the judgment in the estate tax case had become final. First Natl. Bank of Atlanta v. Allen, Collector, D.C., 86 F.Supp. 918.

The amount of the administrative expenses was not definitely ascertainable at the time of the prior estate tax litigation.

At the time the claim was filed, neither the taxpayer nor its counsel could foretell the results of the claim for refund. It was not known whether litigation would be necessary. If litigation became necessary, neither the taxpayer nor its counsel could foretell the course of such litigation, the amount of the recovery, if any, or the amount of work which would be involved. For these reasons there was not and could not be from a practical standpoint any agreement as to counsel fees for the prosecution of the taxpayer's claim for refund. This condition still prevailed at the time of the filing of the first suit, and even on the date of the judgment in that suit, due to the complexity of the questions involved, an appeal was almost certain. The taxpayer had no agreement with the associate counsel in the case for the same reason, and a similar condition prevailed with respect to experts who assisted in the preparation of the case and throughout the litigation. The only agreed limit on any of these expenses was that they would be reasonable.

At the same time there was also pending a suit by the executor of the estate for a refund of income taxes. The same situation prevailed with respect to expenses to be incurred in that action.

Since the judgment in the previous estate tax suit, the executor has recovered a judgment in the income tax suit in the amount of $91,117.77, principal, besides $42,595.13 in interest. Counsel fees in both of those actions have now been agreed upon and the plaintiff has agreed to pay counsel $15,000 for handling the present litigation.

Furthermore, under the Georgia law, the exact amount of the commissions of the executor could not be ascertained, since some portion of those commissions is fixed by the Ordinary. The commission to be paid for delivery in kind of property and the amount to be paid for extraordinary services could not have been ascertained. On June 9, 1949, the Ordinary of Fulton County allowed plaintiff $85,244.90, as compensation for delivering property in kind. and as compensation for extraordinary services in connection with the litigation.

At the time of drafting the original decree, it became apparent to counsel for the plaintiff that it would be necessary for counsel and the court to determine the total amount of administrative expenses, including counsel's fees and executor's commissions, or defer such determination until a time when such could be determined definitely. Accordingly, counsel requested that the reservation be inserted in the prior judgment, so that it would not prejudice the plaintiff's rights, if any, to later claim such deductions.

The question presented to this court for decision is whether an action for refund of estate taxes, on account of expenses incurred in a previous action for refund, which terminated in favor of the taxpayer and subsequently thereto, is barred by the judgment in the previous case, even though such judgment expressly stated that it was without prejudice to any rights for refund on account of administrative expenses which the taxpayer might have.

The defendant contends that an estate tax is a unitary tax and that the taxpayer's

claim for refund constitutes one cause of action, though there be several grounds for refund, and that the taxpayer cannot prosecute his claim for refund piecemeal. The defendant contends that, although administrative expenses, such as those here alleged, are lawfully deductible, the previous judgment adjudicated the amount of refund to which the taxpayer was entitled and is res judicata with respect to recovery of any additional claim.

On the other hand, the taxpayer contends that the previous judgment does not constitute a bar. This contention is based on two arguments. The taxpayer first maintains that the judgment itself reserved the question of the taxpayer's right to claim a deduction for administrative expenses and that this reservation itself, since not appealed from, is now res judicata on the question, and that, even though the reservation may have been erroneous, the defendant cannot now attack it. The taxpayer further urges that, since some of the administration expenses had not been incurred at the time of the former suit and the amount of none of them could be definitely ascertained at that time, the former judgment would not be res judicata, even in the absence of the reservation.

The question of the right of a taxpayer to prosecute a second action for refund, on account of expenses incurred in connection with or after the first action for refund of estate taxes, is not a new one. It has been passed on by the Court of Appeals for four circuits. In none of those cases was there any effort in the first judgment to reserve the question of administrative expenses. The effect of this reservation thus presents a new question and the court will, therefore, first turn its attention to this question.

As stated, the taxpayer contends that the reservation, even if erroneous, is now binding as the judgment of a court of competent jurisdiction. The defendant, on the other hand, contends that the reservation was not merely erroneous but void and, therefore, not binding on any one. The defendant bases this contention on the fact that the pleadings and argument of the case did not raise the question of administrative expenses. He urges that, if the pleadings did not raise the issue, the court had no jurisdiction to reserve it.

It is my view that the court had jurisdiction in the first action to adjudge the amount of deductible administrative expenses. If that be true, the court also had the right to reserve the question. A copy of the decree reserving the question was furnished counsel for the defendant and he was afforded an opportunity to be heard. While on the basis of the record such reservation might have been erroneous and reversible on appeal, I do not think it would be void as beyond the jurisdiction of the Court. Thus, the reservation of the question in the judgment would now be res judicata and beyond attack by the Defendant. Humphreys v. McKissock, 140 U.S. 304, 315, 11 S.Ct. 779, 35 L.Ed. 473; Appleton Toy & Furniture Co. v. Lehman Co., 7 Cir., 165 F.2d 801(1); State ex rel. Bliss v. Casarez, 52 N.M. 406, 200 P.2d 369, 370. If that be correct, the plaintiff is not barred from prosecuting the present action and is entitled to a judgment of refund in an amount determined by the allowable administrative expenses.

The court now turns its attention to the second contention of the taxpayer, which, as stated, has been previously decided. It should here be reiterated that the court finds as a fact from the evidence before it on the motions for summary judgment that the expenses, which the court here finds to be deductible, could not be ascertained at the time of the previous trial with that degree of detail, certainty and exactness, which the regulation requires of any claim for refund. Since no action for refund can be prosecuted without being based upon a claim for refund, the taxpayer could not have filed suit for refund, nor amended the original pending suit, based on the deduction of these administrative expenses until such time as the expenses could have been determined with that degree of definiteness required by the regulation. While the court did have jurisdiction to adjudicate the question in the previous action, as stated above, it is difficult to follow the reasoning which results in holding that judgment in one action is

res judicata to an action for refund on account of expenses growing out of the first suit, or arising subsequently to the first suit. This case is unlike the case of Cleveland v. Higgins, 2 Cir., 148 F.2d 722, which gave birth to the contrary doctrine. In that case, the first action terminated in a settlement with prejudice. At the time of the settlement, the plaintiff knew the amount of the refund to be received, the course the litigation would follow, the amount of work done and to be done by counsel. All of the facts necessary to a determination of the amount of the expenses which the taxpayer later claimed as deductions were known prior to the entry of the judgment. Not so here. The previous litigation between these parties over the estate tax involved three separate and involved questions. The question dealing with the charitable deduction was a case of first impression. Neither taxpayer nor its attorneys could foretell the length of the litigation, the course it would take, the results which would be gained, or the work involved. At the time the claim was filed, they had no way of foretelling the commissioner's action on it. Assuming that court action became necessary, it was impossible to predict whether the case would be appealed and the possibile outcome of any appeal. The case could have been returned for another trial. Under such circumstances, the attorneys would not determine the fee they sought. The executor would not be in a position to determine what fee was justified. Plaintiff's own compensation in this instance depended in part upon the outcome of the original litigation. Thus, the administrative expenses, which would ultimately be incurred and for which the taxpayer would be entitled to a deduction, could not, even at the time of the judgment in the first case, be determined with such certainty as to enable filing of a claim which "set forth in detail * * * each ground upon which a refund is claimed, and facts sufficient to apprise the Commissioner of the exact basis thereof. Any claim which does not comply with the requirements of the preceding sentence will not be considered for any purpose as a claim for refund." Treasury Regulation 105, Section 81.96.

Since the entry of the judgment in the previous case, Treasury Regulation 105 has been amended so as to relieve the taxpayer from complying with Section 81.96, where the claim for refund is based on expenses incurred in connection with assertion of a claim for refund or prosecution of an action for refund. Section 81.34, as amended in 1948, now provides: "A deduction for attorneys' fees incurred in contesting an asserted deficiency or in prosecuting a claim for refund should be claimed at the time such deficiency is contested or such refund claim is prosecuted. A deduction for such fees shall not be denied, and the sufficiency of a claim for refund shall not be questioned, solely by reason of the fact that the amount of the fees to be paid was not established at the time that the right to the deduction was claimed." This would indicate that prior to the amendment a taxpayer filing a claim for refund on account of expenses incurred in connection with the assertion of the claim would have been required to comply with the requirements of Section 81.96 as to definiteness.

If the taxpayer at the time of filing its claim had claimed a deduction of an amount for counsel fees sufficient to prosecute its case to the Supreme Court and also for one or more retrials, and the commissioner had disallowed such claim, the court would then have been called upon to adjudicate a loose estimate. The Second Circuit, in Cleveland v. Higgins, supra, was not confronted with such a situation. In that case, the learned court held that allowing the filing of a second action would lead to an endless succession of suits for refund, based on expenses incurred in the prior action. I do not think that follows. Were it not for the imposition of the bar of res judicata to the second action, there would be no question as to the taxpayer's right of recovery and the commissioner would, without doubt, make an administrative refund. In such case, the counsel for the estate would know what result to expect, what expenses would be involved, what his fee should be, and could thus ask

for all expenses incident to the claim at the time of filing it. It would then be precisely like the case of Cleveland v. Higgins, supra, and it would be proper to require the taxpayer to include in the second claim all expenses which he could easily and accurately determine and detail. Before leaving Cleveland v. Higgins, it might be well to add that that decision was based on Guettel v. United States, 8 Cir., 95 F.2d 229, which was also a case in which the existence and amount of the claim prosecuted in the second action was known at the time of filing of the first suit. The taxpayer omitted the claim from his first suit because of a misunderstanding of the law. That could not, of course, relieve him from the bar. This reinforces the belief that Cleveland v. Higgins was decided on the basis that the taxpayer could easily have estimated the expenses of administration.

The other case on which the defendant relies is that of Van Dyke v. Kuhl, 7 Cir., 171 F.2d 187. In that case the Seventh Circuit follows the case of Cleveland v. Higgins. The factual situation in that case is similar to the one in the instant case and the decision might be more persuasive, except for the positive finding of fact that the expenses, for which a deduction was claimed in the second action, could have been estimated with sufficient accuracy at the time of the first action. In the light of that finding, this court is in agreement with the decision. This court, however, believes that in the instant case the evidence requires the opposite finding.

This court is impressed by the reasoning of the Court of Appeals for the Fourth Circuit, in Magruder v. Safe Deposit & Trust Co., 159 F.2d 913. The defendant argues that the rule of that case might apply to expenses incurred on appeal but not to those incurred in preparation for trial. It would appear that splitting claims for expenses in connection with one litigation would be a perfect example of piecemeal litigation. Asking the taxpayer to claim all expenses incurred at one time in one action for refund and all subsequent ones in another would be impracticable. The expenses of prosecuting a lawsuit would best be handled in one claim.

This court has also considered Martin v. Brodrick, 10 Cir., 177 F.2d 886, 888, and is in accord with that decision, especially the part which reads, as follows: "We agree with the Fourth Circuit that the necessity for repose in litigation does not warrant the application of res judicata to a claim which was not in being when the first claim for refund was filed, and the existence of which was contingent upon the disposition of that claim."

These two cases were decided in light of Cleveland v. Higgins and both courts discussed that case. Still, in spite of their respect for the learned court which decided that case, they found themselves unable to agree with it. This court finds itself in a similar position.

The foregoing discussion would seem to dispose of the defendant's contentions. Without assigning it as a legal reason, but rather as equitable persuasion for adopting the foregoing legal doctrine, the court joins with the dissent in United States v. C. C. Clark, Inc., 5 Cir., 159 F.2d 489, 492, which says: "It is more for the public good that the United States Government in its own courts should deal honorably with its taxpayers than that a few hours of court time should be saved. The rule against splitting a cause of action is one made by judges to promote the public policy of the State. It should not be applied "to frustrate the purpose of its laws or to thwart public policy." ' "

This court is aware that the distinguished Chief Judge of the Fifth Cirucit sat in Cleveland v. Higgins, supra, and that in his concurring opinion of affirmance in United States v. C. C. Clark, Inc., supra, he said: "I am in taxpayer's blood stept in so far that returning were as tedious as go o'er. * * *" However, it may be that he might be cleansed by the oxidizing effects of the factual atmosphere in this case.

This case is before the court on motion for summary judgment by both parties. The plaintiff's motion is granted, and the defendant's motion is denied.

The allowance of additional administrative expenses will result in a reduction in value of the charitable bequests previously allowed as deductions. Let the plaintiff submit a judgment to the Court and let such judgment reflect the adjustment required by such reduction.

In the absence of agreement by counsel on any other pertinent matters, the court will hear and determine such before entry of judgment.