J. P. MORGAN & CO., Inc., Leonhard A. Keyes and Mabel Satterlee Ingalls, as Executors of the Estate of Herbert Livingston Satterlee, deceased,

v.

### The UNITED STATES.

### No. 583–53.

United States Court of Claims.

Nov. 7, 1956.

James H. Nichols, New York City, for plaintiffs. Satterlee, Warfield & Stephens, and J. Fearon Brown, New York City, were on the briefs.

Sheldon J. Gitelman, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant. Andrew D. Sharpe, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

 This case is in all essential respects like Fahnestock v. United States, 95 F.Supp. 232, 119 Ct.Cl. 41. We have reconsidered our decision in that case and have considered the contrary decision of the United States Court of Appeals for the Second Circuit in Guaranty Trust Co. v. United States, 192 F.2d 164, and we adhere to our former opinion. The plaintiffs are entitled to recover, and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S. C.A.

It is so ordered.

LARAMORE and LITTLETON, Judges, concur.

WHITAKER, Judge (dissenting).

The majority say that this case must be decided as the case of Fahnestock v. United States, supra, was decided. I think it clearly appears in this case that the refund, for the interest on which plaintiff sues, was due solely on account of the payment of the inheritance taxes. On such a refund the taxpayers are not entitled to interest; section 813 Internal Revenue Code of 1939, 26 U.S.C.A.

When plaintiffs, as the executors of the Satterlee estate, filed the estate tax return they claimed credit for the amount of tax shown to be due thereon, less 80 per cent of the basic tax, which they deducted as their estimate of the amount of State inheritance, etc., taxes which the State would be required to pay.

The Commissioner made a redetermination of the tax and asserted a deficiency. The executors then filed a petition in the Tax Court of the United States for a redetermination of the deficiency. Thereafter, counsel for the

plaintiffs and the Chief Counsel of the Internal Revenue Service entered into a stipulation, upon the basis of which the Tax Court entered its determination that there had been an overpayment of estate taxes in the amount of $79,619.82. This amount was refunded to the executors on October 7, 1952, *with interest in the amount of $19,278.90*.

The stipulation entered in the Tax Court was based on adjustments in the computation of the Federal tax liability, which showed total estate tax liability of $382,025.13. Since taxes in the amount of $461,644.95 had been assessed and paid, the computation showed that plaintiffs were entitled to a refund of $79,619.82.

In the computation of the estate tax liability, upon the basis of which the stipulation was entered into, no credit was given for State inheritance, etc., taxes, but the summary showed that there was an allowable credit on this account of $46,570.43, and it stated:

"In the event satisfactory evidence is submitted showing the payment of $46,570.43, the net estate liability will be $335,454.70, resulting in an overassessment of $126,190.25."

Later, when payment was made of the State inheritance taxes, this amount of $46,570.43 was refunded.

It is plain that it was refunded solely on account of the allowance of the deduction of State inheritance taxes. The statute very plainly says that no interest is allowable on account of such a refund.

In our opinion in Fahnestock v. United States, supra, we stated that the reduction in estate tax liability resulted from the inclusion in the taxable estate of items which it was later held should not have been included, and we were of the opinion that the refund was made on account of the elimination of these items.

In that case it did not so clearly appear that the refund was due to the allowance of the credit for the payment of State inheritance taxes as it does in this case. In the case at bar I do not think there can be any doubt that it was.

This decision is in accord with the decision of the United States Court of Appeals for the Second Circuit in Guaranty Trust Company of New York v. United States, 192 F.2d 164.

JONES, Chief Judge, joins in the foregoing dissenting opinion.

Findings of Fact

The court, having considered the evidence, the briefs and argument of counsel, and the report of Commissioner Richard H. Akers, makes findings of fact as follows:

1. The plaintiffs are the duly appointed executors of the Estate of Herbert Livingston Satterlee, hereinafter sometimes referred to as the "decedent," who, at the time of his death on July 14, 1947, was a resident of the State of New York and a citizen of the United States.

2. On October 14, 1948, the executors of the decedent's estate then acting filed a federal estate tax return for the decedent's estate setting forth total gross federal estate taxes (basic and additional) payable of $531,049.37, and claiming a credit against such tax of $69,404.42 for "State inheritance, etc., taxes," which was 80 percent of the basic tax of $86,755.52 set out in such return and was allowable when proof was furnished to the federal authorities of the payment of such state taxes to the state authorities. Payment of these state taxes and the furnishing of proof thereof to the federal authorities were carried out as shown in finding 10.

On October 14, 1948, the executors paid the net amount shown as payable on that return, that is, $461,644.95, which represented the difference between the total gross estate taxes of $531,-049.37, as computed by the executors, and the credit of $69,404.42 claimed in that return on account of state inheritance taxes as described above.

3. On or about May 16, 1951, the Commissioner of Internal Revenue mailed to the executors a 30-day letter enclosing a report of a revenue agent and showing a computation of a deficiency

with respect to the decedent's federal estate tax in the amount of $88,314.16. The report stated that, in determining the above deficiency, credit for state estate, inheritance, legacy or succession taxes had been disallowed in whole in the amount of $72,251.64, which represented the maximum credit allowable under the revised computation, but stated further that if complete credit evidence were filed, the net deficiency would be $16,062.52.

4. On or about September 17, 1951, the Commissioner mailed to the decedent's executors a notice of deficiency with respect to federal estate tax of the estate in the same amount as set out in the 30-day letter referred to in the preceding finding, that is, a deficiency of $88,314.16, which resulted in a determination of a total estate tax liability, as computed by the Commissioner, of $549,959.11. That letter contained a statement similar to that set out in the 30-day letter with respect to the credit for state inheritance taxes, namely—

"In the event that evidence of the payment of State, territorial estate, inheritance, legacy, or succession taxes as required by Section 81.9 of Regulations 105, is filed within the ninety-day period, the net deficiency in the amount of $16,062.52 will be assessed."

5. On or about December 10, 1951, the executors filed a petition in the Tax Court of the United States for a redetermination of the deficiency in estate tax as set forth by the Commissioner in his notice of deficiency dated September 17, 1951, and referred to in the preceding finding.

6. On or about June 19, 1952, a stipulation between counsel for plaintiffs and the chief counsel for the Internal Revenue Service was filed with the Tax Court of the United States settling the Tax Court proceedings and reading as follows:

"(a) That the Federal estate tax liability in this proceeding is as shown by the following statements:

Estate tax assessed ...................... $461,644.95
Estate tax paid: October 14, 1948 .................... $461,644.95
Estate tax liability ................................. 382,025.13

Overpayment (Section 912 Internal Revenue Code) ...... 79,619.82
Date deficiency notice mailed: September 17, 1951.
Claim for refund filed October 8, 1951.

"(b) That the Court may enter its order that there is an overpayment of estate tax due petitioners in the amount of $79,619.82.

"(c) That the estate shall be entitled to credit for State inheritance and estate taxes paid as is provided by law upon filing proof of payment of such tax in the manner required by law and Section 81.9 of Regulations 105."

7. On or about June 27, 1952, the Tax Court entered its decision "that there was an overpayment in estate tax in the amount of $79,619.82"; and on or about October 7, 1952, $79,619.82 with interest in the amount of $19,278.90 was refunded to the plaintiffs.

8. The following is a summary of the adjustments in the computation of the federal estate tax liability which was made by the Internal Revenue Service and on which the stipulation referred to in the preceding finding was based:

"Estate Tax

| Liability | Assessed | Overassessment |
|---|---|---|
| $382,025.13 | $461,644.95 | $79,619.82 |

Adjustments to Net Estate

| | For basic tax | For additional tax |
|---|---|---|
| Net estate as shown in the deficiency letter dated September 17, 1951........ | $1,520,161.62 | $1,548,353.57 |

Additions:
(a) Newly discovered assets..$1,935.45
(b) Increase in property
previously taxed.....232,528.87

| | For basic tax | For additional tax |
|---|---|---|
| | 234,464.32 | 234,464.32 |
| Total ..................... | 1,754,625.94 | 1,782,817.89 |

Deductions:
(c) Real estate ...........$20,000.00
(d) Additional attorneys' fees ............... 2,820.00
(e) Additional miscellaneous administration expenses ............. 408.40
(f) Assets transferred to property previously taxed ........... 418,710.95

| | For basic tax | For additional tax |
|---|---|---|
| | $441,939.35 | $441,939.35 |
| Balance .................. | 1,312,686.59 | 1,340,878.54 |
| (g) Adjustment for deduction for property previously taxed ............... | 191,273.63 | 196,455.14 |
| | 1,121,412.96 | 1,144,423.40 |

Computation of Estate Tax

Net estate (for basic tax) ...........................$1,121,412.96
Net estate (for additional tax) ...................... 1,144,423.40
Gross basic tax:
Tax on $1,000,000.00 .....................$48,500.00
121,412.96 at 8% .............. 9,713.04

58,213.04

Credit for State inheritance, etc., taxes ............... None

Gross basic tax ................................... 58,213.04
Total gross taxes (basic and additional):
Tax on $1,000,000.00....$325,700.00
144,423.40 at
39%........ 56,325.13

$382,025.13

Gross basic tax .......................... 58,213.04

Gross additional tax .............................. 323,812.09

Total gross taxes, basic and additional ............... 382,025.13
Estate tax liability .............................. 382,025.13
Assessed:
 Return: Oct. 1948, page 105, line 5 ................ 461,644.95

Overassessment .................................. 79,619.82

 Computation of credit allowable against the gross basic tax provided the provisions of Section 81.9 of Regulations 105 are complied with:

Gross basic tax ....................................... $58,213.04
80% credit for State estate and inheritance taxes ........ 46,570.43
Credit substantiated .................................. None

Credit allowable ..................................... 46,570.43

 In the event satisfactory evidence is submitted showing the payment of $46,570.43 the net estate tax liability will be $335,454.70 resulting in an overassessment of $126,190.25.

### Statement of Account

Estate tax assessed ................................. $461,644.95
Estate tax liability ................................. 382,025.13

Overassessment ...................................... 79,619.82
Estate tax paid October 14, 1948 ...................... 461,644.95
Estate tax liability ................................. 382,025.13

Overpayment (Section 912 I. R. Code) ................ 79,619.82"

The net estate (for basic tax) set out above, $1,121,412.96, was $356,781.01 less than the corresponding figure for that tax set out in the original return and the net estate (for additional tax) set out above, $1,144,423.40, was $361,-908.54 less than the corresponding figure for that tax also set out in the original return.

9. The major reason for the decrease in estate tax liability resulted from the transfer of the Ingalls and Gibbs Trusts from Schedule B to Schedule I of the return. The reason for the transfer was that certain securities listed in Schedule B of the return as originally filed, having a total value of $403,265.44 as of the valuation date, were received by the decedent from two trusts created by his wife, Louisa P. Satterlee, in 1929. Louisa P. Satterlee predeceased the decedent, having died on October 7, 1946. In the original federal estate tax return filed for her estate, these two trusts were not included in her gross estate. In the final settlement of the estate tax liability of the Estate of Louisa P. Satterlee, which occurred subsequent to the filing of the estate tax return for the Estate of Herbert Livingston Satterlee, these trusts and these securities were included in her estate as a transfer intended to take effect in possession or enjoyment at or after her death under section 811(c) of the Internal Revenue Code of 1939.

10. Subsequent to the filing of the Tax Court decision, the decedent's executors submitted proof with regard to the payment of state estate, inheritance, legacy, or succession taxes paid to the States of New York, Maine, Maryland and Connecticut, and on December 15, 1952, a credit against the federal estate

tax for state estate, inheritance, legacy or succession taxes paid was allowed by the Commissioner in the amount of $46,570.43.

The foregoing proof established the following with respect to the payment of those taxes:

(a) Payment of $1,728.10 to the State of Maine on October 14, 1948;

(b) Payment of $965.73 to the State of Maryland on February 26, 1949;

(c) Payment of $20.58 to the State of Connecticut prior to August 1, 1952.

(d) On January 14, 1948, the decedent's executors deposited $50,000 with the Department of Taxation and Finance of the State of New York, and on January 14, 1949, deposited a further sum of $27,000 with the same authorities on account of New York estate tax due from the decedent's estate. On September 30, 1952, the above authorities certified that $43,856.02 had been paid out of the foregoing deposits on account of the New York estate tax liability of the decedent's estate. A final determination of the New York estate tax due from the decedent's estate was made on March 31, 1953, showing a total sum of $48,773.02. Of that amount, $43,856.02 had been previously satisfied as just shown above.

11. As shown in finding 7, on or about October 7, 1952, the decedent's executors received a refund of $79,619.82 with interest of $19,278.90. On or about January 16, 1953, the executors received a check for a further refund in the amount of $46,570.43 but without interest. Interest was disallowed with respect to the $46,570.43 refunded on January 16, 1953, on the stated ground that this refund resulted from the allowance of credit for state taxes and that payment of interest was prohibited by section 813 of the Internal Revenue Code of 1939.

12. On or about April 17, 1953, the plaintiffs filed a claim of $12,202.73 for interest on the refund of estate taxes of $46,570.43, referred to in the preceding finding. More than six months had elapsed from the time the plaintiffs filed that claim for interest to the time the plaintiffs filed the petition in this action.

### Conclusion of Law

Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiffs are entitled to recover and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38(c) of the Rules of this court.